**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| **GLENDA LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 05-0432-CG-B** |
| | ) | |
| **JOHN HOUSTON, COMMISSIONER;** | ) | |
| **STATE OF ALABAMA DEPARTMENT** | ) | |
| **OF MENTAL HEALTH AND MENTAL** | ) | |
| **RETARDATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on defendants' motion for summary judgment and brief in support (Docs. 23 & 24), plaintiff's response thereto (Doc. 28), and defendants' reply (Doc. 29). The court finds that plaintiff has failed to demonstrate prima facie cases of discrimination, retaliation, or hostile environment. The court also finds that defendants have proffered a legitimate nondiscriminatory reason for placing plaintiff on mandatory leave and terminating plaintiff and that plaintiff has failed to show pretext. Therefore, defendants' motion for summary judgment is due to be granted.

## FACTS

Plaintiff is an African-American female who began working at Searcy Hospital in 1994 as an account clerk in Financial Services. In 2001, plaintiff filed an EEOC charge alleging she had been denied a reasonable accommodation, was subjected to sexual harassment and was

discriminated against on the basis of her race, sex, and gender.  On April 5, 2002, plaintiff filed a lawsuit against the Department of Mental Health and Mental Retardation ("DMH/MR").  The lawsuit was settled in April 2003, prior to trial. (McLean Affid. Ex. 4)

Ms. Beatrice McLean is the sole person at Searcy Hospital who has authority to terminate DMH/MR employees. (McLean Affid. ¶ 2).  McLean is an African-American female. (McLean Affid. ¶ 1).  In early 2002, it was reported to McLean that plaintiff had told her supervisor "I see why people go postal" and then said she knew where the guns are kept. (McLean Affid. ¶ 4).   At that time, guns which the security personnel had previously turned in were stored in a safe in Financial Services, where plaintiff was assigned.  McLean thereafter had the guns relocated, out of the Financial Services area.  (McLean Affid. ¶ 4).

In July 2004, the Director of Financial Services, Sam Levio, reported to McLean that on July 14, 2004, an altercation had occurred near the time clock between two financial services employees, plaintiff and Marva Huff. (McLean Affid. ¶ 7).   Ms. Marva Huff is also an African-American female. (McLean Affid. ¶ 7).  Plaintiff alleged that Huff had pushed plaintiff. (Levio Affid. ¶ 5).  McLean instructed Searcy Hospital Police Department to conduct an investigation.(McLean Affid. ¶ 7).  The investigator found that both parties had engaged in a verbal altercation and recommended that a pre-disciplinary conference be held for plaintiff and Huff. (McLean Affid. ¶ 7, Levio Affid. ¶ 6).  On October 29, 2004, McLean held a pre-disciplinary conference with plaintiff and afforded her the opportunity to explain what occurred during the verbal altercation with Huff. (McLean Affid. ¶ 8).  McLean determined that plaintiff and Huff both violated DMH/MR Policy 70-5; Employee Conduct and Accountability Standard 1r Disruptive or Disorderly Conduct and Standard 2: Item 2 - Co-operation with co-workers, by

publicly exchanging words of anger towards a co-worker while on the job. (McLean Affid. ¶ 9).

In November 2004, another altercation involving plaintiff was reported to McLean. (McLean Affid. ¶ 12).  Dr. Mendoza stated that on November 17, 2004, he had been accosted by plaintiff in the parking lot because he parked in a handicapped parking space that plaintiff claimed belonged to her.(McLean Affid. ¶ 12).  Prior to this alleged altercation, Searcy Hospital had granted plaintiff an accommodation allowing her to park in any available handicapped parking space on the Searcy Hospital grounds. (McLean Affid. ¶ 15).  McLean instructed Searcy Police to conduct an investigation. (McLean Affid. ¶ 12).  The Investigative Review Committee later found that there was evidence to substantiate Dr. Mendoza's claim that plaintiff's behavior during the incident was threatening, inappropriate and angry. (McLean Affid. ¶ 30).  The investigation also found that Dr. Mendoza had done nothing wrong. (McLean Affid. ¶ 30).

On November 22, 2004, McLean prepared letters of verbal reprimand for plaintiff and Huff for their behavior on July 14, 2004 and instructed another employee, Mr. Levio, to deliver the letters. (McLean Affid. ¶ 19, Levio Affid. ¶ 10, Levio Affid. Ex. 4).  Levio reported on December 2, 2004, that plaintiff refused to sign the paperwork. (McLean Affid. ¶ 21, Levio Affid. ¶ 12, Levio Affid. Ex. 4).  Mr. Levio also reported that plaintiff also told him "I should have gone postal." (McLean Affid. ¶ 21, Levio Affid. ¶ 13).  Levio reportedly asked plaintiff to clarify what she meant and plaintiff responded that she should have taken matters into her own hands, and said next time she would. (McLean Affid. ¶ 21, Levio Affid. ¶ 13).  Plaintiff admits that she asked Levio "if I had 'gone postal' what would have happened" and that she refused to sign the paperwork until she understood how she had violated policy. (Lewis Affid. ¶ 7). McLean contacted personnel and instructed them to send a memo to the Searcy Police

3

Department instructing them to escort plaintiff to the Police Department when she arrived at work on Monday, December 6, 2004. (McLean Affid. ¶ 22). According to McLean, plaintiff was exhibiting a pattern of noncompliance with hospital policy that was getting progressively worse and she had become an imminent threat to the work environment. (McLean Affid. ¶ 23).

On December 6, 2004, plaintiff was escorted to Searcy Hospital Police Department, where she was told to wait until she received further instructions from McLean. (McLean Affid. ¶ 25). McLean does not have the authority to unilaterally place an employee on mandatory annual leave, so McLean began following department protocol to secure approval from the Central Office Personnel manager and written approval from the Alabama State Personnel Department on mandatory annual leave. (McLean Affid. ¶ 26). McLean received the requisite approval, but plaintiff, against McLean's instructions, had already left hospital grounds. (McLean Affid. ¶¶ 27,28).

On December 20, 2004, McLean held a pre-disciplinary conference with plaintiff. (McLean Affid. ¶ 33). Plaintiff remained on mandatory annual leave until she was terminated on December 20, 2004. (McLean Affid. ¶ 31). Plaintiff appealed her dismissal to the State of Alabama Personnel Department and a termination appeal hearing was held on March 7, 2005. (McLean Affid. ¶ 34). The Administrative Law Judge recommended to the board that plaintiff's termination should be upheld. (McLean Affid. ¶ 35, McLean Affid. Ex. 6). On May 18, 2005, the State of Alabama Personnel Board upheld plaintiff's termination. (McLean Affid. ¶ 36, McLean Affid. Ex. 7).

McLean maintains that she is not aware of any complaints by plaintiff of discrimination or retaliation during McLean's tenure as Director of Searcy Hospital. (McLean Affid. ¶ 37).

Levio, who was plaintiff's immediate supervisor, also maintains that plaintiff made no complaints of racial or sexual discrimination or retaliation during the time he was Director of Financial Services. (Levio Affid. ¶ 18).  Searcy Hospital's Director of Human Resources, who has been in the position since January 2003, also states that plaintiff made no complaints of racial or sexual discrimination or retaliation to her, or as far as she is aware, to anyone else during her employment at Searcy Hospital. (Tolbert Affid. ¶ 30).

Plaintiff admitted at her deposition that she did not think her termination was based on her race. (Lewis Depo. p. 39).  Plaintiff states that she was treated differently from two white employees, Ann Smith and Deann Watkins. ((Lewis Depo. p. 40).  According to plaintiff, she was treated differently than Ann Smith in 2001 because Smith received more help and relief for breaks and lunch. (Lewis Depo. pp. 40-41).

Plaintiff submitted copies of her performance evaluations for the periods from June 1, 2001 to June 1, 2002, and from June 1, 2003 to June 1, 2004.  Both performance evaluations indicate that her work exceeded standards.  In fact, in August 2002, plaintiff received a two-step salary increase based on her work performance. (Aug. 15, 2002 letter from Personnel Manager Duerksen).  However, the first evaluation also indicated plaintiff had been given a verbal counseling on March 1, 2002 and the second stated that plaintiff had been given a written counseling on August 4, 2003 for violating policy number 60.46 for punctuality.

## **LEGAL ANALYSIS**

### **A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Plaintiff's Claims**

Plaintiff's complaint alleges disparate treatment and hostile environment based on race in violation of Title VII (Count One), disparate treatment in violation of 42 U.S.C. § 1981 (Count Two), and "unlawful reprisal against the Plaintiff because of her prior protected activities under Title VII" (Count Three).  Defendants have moved for summary judgment of all claims asserted against John Houston, in his official capacity, as redundant; all claims asserted under Title VII as time barred; and all claims against all defendants for plaintiff's failure to establish a prima facie case or to show pretext.  Because the court finds below that summary judgment is due to be granted in favor of all defendants based on plaintiff's failure to demonstrate a prima facie case and failure to show pretext, the court finds it unnecessary to address defendants' other arguments.

**1. Disparate Treatment and Retaliation**

A  plaintiff may prove discrimination or retaliation by relying on either direct,

7

circumstantial, or statistical evidence.[1]  See Walker v. Nationsbank of Florida N.A., 53 F.3d

1548, 1555 (11th Cir. 1995) see also Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir.

1999) ("the same analytical framework applies to retaliation claims as applies to other

employment discrimination claims, including the availability of the McDonnell Douglas

presumption." citation omitted).    Direct evidence is evidence which, "if believed, proves the

existence of discriminatory motive 'without inference or presumption'" Hamilton v.

Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter

v. Three Springs Residential Treatment,132 F.3d 635, 641 (11th Cir. 1998)).  As the U.S. District

Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an
> employer' but the actions or statements at issue must 'correlat[e] to the
> discrimination or retaliation complained of by the employee.' Further, the
> statements 'must be made by a person involved in the challenged decision' and
> must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)).

Plaintiff has submitted no direct evidence of discrimination or retaliation.  None of the evidence

offered proves without inference or presumption that the person who made the employment

decisions did so based on plaintiff's race or as a result of a retaliatory motive.  In addition, no

evidence has been presented from which such a motive could be inferred or presumed.

   A plaintiff may attempt to show discrimination and retaliation based on circumstantial

evidence through the application of the McDonnell Douglas burden-shifting analysis established

by the Supreme Court. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the

McDonnell Douglas framework, a plaintiff must first raise an inference of discrimination or

retaliation by establishing a prima facie case. See Chapman v. AI Transport, 229 F.3d 1012,

---

[1] "The order and allocation of proof governing Title VII claims based on circumstantial
evidence applies equally to similar claims of employment discrimination in violation of the equal
protection clause raised pursuant to Section 1983." Morris v. Wallace Community College-
Selma, 125 F.Supp.2d 1315, 1333 n. 16 (S.D. Ala. 2001) (citations omitted).

1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th

Cir.1997)).

In order to make out a prima facie case of discrimination, a plaintiff must show:

(1)[s]he is a member of a protected class; (2)[s]he suffered an adverse job action;
(3) h[er] employer treated similarly situated employees outside h[er] classification
more favorably; and (4)[s]he was qualified to do the job.

Barnes v. Crowne Investments, Inc., 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005) (citations

omitted). The first prong is satisfied as it is undisputed that plaintiff is a member of a protected

class. It is also undisputed that plaintiff was qualified to do the job. Clearly, plaintiff's

termination also satisfies the second prong requirement of an adverse job action. However,

defendants dispute that any other action constitutes an adverse job action. Defendants also

dispute that plaintiff was denied the same terms and conditions of employment as enjoyed by

white co-workers and plaintiff has offered little evidence in support of that contention. Although

plaintiff stated at her deposition that she was treated differently than two other employees, the

alleged disparate treatment occurred in 2001, prior to plaintiff's first lawsuit which she settled

and long before plaintiff's current EEOC charge and lawsuit. Notably, plaintiff's EEOC charge

only complains of discrimination and retaliation that took place in December 2004, when she

was allegedly suspended and terminated. Additionally, although plaintiff claims two employees

were treated differently in 2001, plaintiff has not shown that they were similarly situated.

Plaintiff has also failed to identify any similarly situated employees with respect to her allegation

that her "suspension"[2] and termination were discriminatory. Plaintiff has offered no evidence

that any non-minority employee that was accused of similar conduct was not disciplined in the

same way. In fact, plaintiff admitted that she did not believe her termination was based on her

race. Accordingly, the court finds that plaintiff has not established a prima facie case of

---

[2] The court notes that defendants also dispute that plaintiff's alleged suspension
constitutes an adverse employment action. According to defendants, plaintiff was not
suspended, but put on mandatory annual leave. As such, she continued to receive full pay until
her termination.

discrimination.

To establish a <u>prima facie</u> case of retaliation based on circumstantial evidence, the plaintiff must show that: (1) she engaged in a statutorily protected expression;  (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and her protected expression.  <u>Lucas v. W. W. Grainger, Inc.</u>, 257 F.3d 1249, 1260 (11th Cir. 2001) (citations omitted).

The plaintiff's filing of complaints claiming discrimination is clearly a protected expression and, as stated above, being terminated is clearly an adverse employment action. However, plaintiff has presented no evidence of a causal link between the adverse action and her protected expression.  There is no temporal proximity since plaintiff's prior lawsuit was filed on April 5, 2002, and was settled in April 2003 and she was not placed on mandatory leave or terminated until December 2004.  The fact that the adverse action occurred 18 months after the protected expression came to a consensual end does not demonstrate a causal link.  In addition, there is no evidence of derogatory remarks or other indices of bias by the decision maker or any other employee.  Thus, the court finds that plaintiff has not established a <u>prima facie</u> case of retaliation.

Assuming, for the purpose of argument, that plaintiff could establish a <u>prima facie</u> case of discrimination or retaliation, the burden would then shift to the defendants, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action.  The employer's burden is exceedingly light." <u>Hamilton</u>, 122 F.Supp.2d at 1280 (quoting <u>Meeks v. Computer Assoc. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  If the defendants proffer a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. <u>Id.</u>  "At the pretext stage, in order to survive summary judgment, Plaintiff[s] must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum,

that the proffered reasons were not actually the motivation for the employer's decision." <u>Miller v. Bed, Bath & Beyond, Inc.</u>, 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing <u>Combs</u>, 106 F.3d at 1538).  Plaintiff may do this  "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." <u>Id.</u> (citations omitted). "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" <u>Hamilton</u>, 122 F. Supp.2d at 1281 (quoting <u>Combs</u>, 106 F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff at all times in cases involving merely circumstantial evidence. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the adverse employment action was on account of race, a plaintiff need not establish that race was the sole reason for the action, but that it was a determinative factor in the employer's decision. <u>See</u> <u>Anderson v. Savage Laboratories, Inc.</u>, 675 F.2d 1221, 1224 (11th Cir. 1982) (citing <u>Haring v. CPC International, Inc.</u>, 664 F.2d 1234, 1239-40 (5th Cir. 1981)).  However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." <u>Chapman</u>, 229 F.3d at 1030 (quoting <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." <u>Chapman</u>, 229 F.3d at 1030.

In this case, defendants have clearly met their burden of proffering a legitimate, non-discriminatory reason for placing plaintiff on mandatory leave and subsequently terminating her. Plaintiff had violated department policy and had exhibited threatening, inappropriate and/or angry behavior on more than one occasion.   Although, plaintiff claims the reported incidents of her bad behavior were not accurate, an "employer may fire an employee for a good reason, a bad

reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Defendants have proffered a legitimate, non-discriminatory reason for the employment decisions and plaintiff has failed to show pretext. Therefore, even if plaintiff could demonstrate a prima facie case, summary judgment is due to be granted in favor of defendants on plaintiff's discrimination and retaliation claims.

### 2. Hostile Environment

The complaint asserts a claim of hostile environment based on race. According to the Eleventh Circuit, a hostile work environment claim is established:

> upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). This court has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. See, e.g., [Mendoza v. Borden, 195 F.3d 1238,1245(11th Cir. 1999)] (applying these factors in the context of a hostile environment sexual harassment claim).

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

There is no dispute that plaintiff, as an African-American, is a member of a protected group. However, plaintiff has presented no evidence to support any of the other prongs she is required to establish in order to make out her claim. Plaintiff did not even address her hostile environment claim in her response to defendants' motion for summary judgment. "In opposing a motion for summary judgment, a 'party may not rely on his pleadings to avoid judgment against him.'" Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom., Jones v. Resolution Trust Corp., 516 U.S. 817 (1995)(citing Ryan v. Int'l Union of Operating Eng'rs., Local 675, 794 F.2d 641, 643 (11th Cir. 1986)). Moreover, "[t]here is no

burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Id. at 599 (citations omitted).  The court finds that summary judgment is due to be granted in favor of defendants on plaintiff's hostile environment claim.

## CONCLUSION

For the reasons stated above, summary judgment is **GRANTED** in favor of defendants on all claims.

**DONE** and **ORDERED** this 21st day of July, 2006.


  /s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE